**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobby Scott,<br><br>   Plaintiff,<br><br>v.<br><br>The GEO Corp., et al.,<br><br>   Defendants. | No. CV 22-08129-PCT-JAT (JFM)<br><br>**ORDER** |

Pro se Plaintiff Bobby Scott is confined in the Arizona State Prison-Kingman and is proceeding in forma pauperis. In a July 29, 2022 Order, the Court dismissed Plaintiff's civil rights Complaint because he had failed to state a claim upon which relief could be granted, denied without prejudice Plaintiff's motions for counsel and a preliminary injunction, and gave Plaintiff an opportunity to file an amended complaint that cured the deficiencies identified in the Order.

On August 26, 2022, Plaintiff filed his First Amended Complaint (Doc. 11) and a Motion for the Appointment of Counsel (Doc. 12).[1] The Court will order Defendants to answer the First Amended Complaint and will deny without prejudice the Motion for Appointment of Counsel.

. . . .

---

[1] Plaintiff also filed a Request for the Court to Issue a Preliminary Injunction Order. After Defendant GEO responded to the request, Plaintiff withdrew his request, noting that the doctor and Health Services Administrator had "ordered [Plaintiff] a visit to a dermatology clinic to test and treat the skin cancer and a[n] MRI to test the lymph nodes."

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II. First Amended Complaint

In his two-count First Amended Complaint, Plaintiff sues Defendants GEO, Health Service Administrator Amber Puckett, Assistant Director of Nursing Kimberly Grassi, Doctor Richardson, and Nurse Practitioner Lucero. Plaintiff raises Eighth Amendment medical care claims regarding his skin cancer (Count One) and swollen lymph nodes (Count Two) and seeks injunctive relief, monetary damages, and his costs of suit.

In **Count One**, Plaintiff makes the following allegations. Two-and-a-half years ago, he was sent to a skin cancer clinic where skin cancer on the upper left side of his neck was frozen off. The skin cancer returned. Six months after his first visit to the clinic, he went back to the clinic and the skin cancer again was frozen off. The clinic scheduled Plaintiff for a follow-up appointment in six months "to surgically remove and biopsy the skin cancer if it came back again." Although the skin cancer returned, Plaintiff was never taken to the follow-up appointment.

Approximately a year-and-a-half ago, during an examination by Defendant Richardson, Plaintiff told Defendant Richardson that the skin cancer had returned and requested the follow-up appointment. Defendant Richardson "denied" the follow-up appointment, but told Plaintiff he was going to schedule a biopsy. Plaintiff never received the biopsy.

On May 3, 2022, after Plaintiff's skin cancer "began swelling," he submitted a health needs request form, requesting the medical department reschedule the follow-up appointment with the clinic. On May 12, he submitted an informal resolution because "[n]othing was being done." On May 19, Plaintiff saw Defendant Lucero, who examined Plaintiff, "found the missed clinic visit" in Plaintiff's medical file, and told Plaintiff that she would "get with [Defendant] Richardson" and call Plaintiff back. Plaintiff was never called back.

Later in May 2022, Plaintiff saw Defendant Lucero for a different issue and asked her if she had checked with Defendant Richardson about the clinic visit. Defendant Lucero told Plaintiff, "we are waiting on the results." Plaintiff contends this indicates Defendant

1    Lucero had not checked with Defendant Richardson because Plaintiff's skin cancer was
2    never tested and, therefore, there could not have been any results. In addition, Plaintiff and
3    Defendant Lucero discussed the results of Plaintiff's blood test, which indicated his white
4    blood cell count was high. Defendant Lucero told him, "it doesn't mean anything," and
5    did nothing, even though having a high white blood cell count "does mean something."

6    Plaintiff filed a formal grievance on June 3, 2022, because he never received a response to his May 12 informal resolution. Three days later, two case managers told him that "medical assured them that if [Plaintiff] refiled the [informal resolution, the medical department] would promptly address the issue." On June 6, Plaintiff refiled his informal resolution. He did not receive a response to it.

11   Because Plaintiff had not received a response to his May 12 informal resolution or the June 6 refiled informal resolution, he filed a June 27, 2022 formal grievance, requesting "the appointment (late) and 'a full cancer screening to [e]nsure it hasn't spread elsewhere.'" On July 13, he submitted another health needs request form, asking if his skin cancer had been scheduled for removal and requesting ointment. Plaintiff saw a nurse who told him ointments are "specific to a type of skin cancer" and they would not know what ointment to give Plaintiff until a biopsy was done to determine the type of skin cancer Plaintiff had.

18   On July 18, 2022, Plaintiff received a response to his formal grievance from Defendant Grassi, who stated that Plaintiff was "scheduled to see the provider." Plaintiff contends this response "did not resolve the issue," so he filed a July 19 grievance appeal requesting an appointment to remove and test his skin cancer "to see if it spread." He also submitted a July 19 health needs request form complaining about "left ear and neck pain."

23   Plaintiff went to the medical department on July 20, 2022, to see Defendant Richardson. While a nurse was conducting a pre-examination, Defendant Puckett "grabbed [Plaintiff's] file from [the nurse] and took it into the back office." Defendant Richardson went into the back office 45 minutes later, came out with Plaintiff's file, and examined Plaintiff for skin cancer. Defendant Richardson told Plaintiff that "it was just 'Act[i]nic Keratoses'" and that Plaintiff did not need a biopsy. Plaintiff claims this was "a complete

180º from 1 1/2 years earlier," when Defendant Richardson had ordered a biopsy. Plaintiff contends "[s]omething changed" and "[t]his was odd" because Plaintiff's skin cancer had "changed[] for the worse." Defendant Richardson also examined the lymph nodes in Plaintiff's neck, by his left ear, and told Plaintiff they were swollen. Plaintiff claims that the following day, Defendant Puckett responded to the July 19 grievance appeal, stating that there "was not a diagnosis of skin cancer but rather Actinic Keratoses."

Plaintiff alleges Defendant GEO has a "concealed policy" and "instituted an order to limit clinic visits," which "is partly why [Plaintiff] was never sent to a clinic." He contends Defendant Richardson was deliberately indifferent because he denied Plaintiff the clinic appointment, refused to give Plaintiff "the biopsy [Defendant Richardson] supposedly ordered," and "has not and will not give [Plaintiff] any tests or treatment." Plaintiff asserts Defendant Lucero was deliberately indifferent because she "declined to give [Plaintiff] the clinic visit," ignored the results of the blood test, and refused to provide any tests or treatment.

Plaintiff claims Defendant Grassi was responsible for investigating and resolving Plaintiff's formal grievance and had the authority to grant Plaintiff's requests for a clinic visit and a "full cancer screening" to ensure the cancer had not spread, but was deliberately indifferent because she did nothing other than refer Plaintiff to "the same providers [who] were the cause for the [formal grievance]." Plaintiff alleges Defendant Puckett was responsible for responding to Plaintiff's grievance appeal and was deliberately indifferent because she "had the power to correct medical's mistreatment and ensure that [Plaintiff] received needed testing and care," but she "did nothing" other than tell him there was no skin cancer diagnosis. Plaintiff asserts there was no diagnosis for skin cancer because "cancer is diagnosed with a biopsy." Plaintiff alleges his skin cancer is "remain[ing], worsen[ing] and spread[ing] undiagnosed" because of Defendant GEO's policy of limiting clinic visits and the individual Defendants' actions and inaction.

In **Count Two**, Plaintiff makes the following allegations. On July 21, 2022, Plaintiff submitted a health needs request form seeking a biopsy of the swollen lymph

nodes Defendant Richardson had noticed during his July 20 examination, which were located directly behind the skin cancer on the upper left side of Plaintiff's neck. A nurse responded that Defendant Richardson had concluded this was "TMJ, 'not swollen lymph nodes'" and that Defendant Richardson had prescribed naproxen for the TMJ.

On July 22, 2022, Plaintiff submitted a medical informal resolution, notifying the medical department that "there was a problem with [his] lymph nodes" and requesting the medical department "find out why [his] lymph nodes are swollen and rule out lymphoma." On July 25, he submitted another health needs request form regarding his swollen lymph nodes, indicating he had pain and requesting a diagnosis and treatment. Defendant Richardson evaluated Plaintiff later in July for chronic obstructive pulmonary disease and asked if Plaintiff's lymph nodes were still swollen. Plaintiff indicated that they were, but Defendant Richardson did not treat the swollen lymph nodes.

On July 28, 2022, Plaintiff received Defendant Grassi's response to his informal resolution stating he was "scheduled to see the provider." Because "[a] promise to see the provider who isn't doing anything did not resolve the issue," Plaintiff filed a formal grievance. He explained his swollen lymph nodes were worsening, his white blood cell count was high, and the two symptoms could mean he had "cancer, lymphoma, an infection or even an immune problem." He requested a biopsy, a "check for other things & treatment for whatever it is."

On August 4, 2022, Plaintiff received a pass to see Defendant Richardson regarding his swollen lymph nodes, but the visit was cancelled. On August 9, Defendant Puckett responded to the formal grievance, stating that Plaintiff was "scheduled to see the provider." Because "[a]nother promise to see the provider did not resolve the issue," Plaintiff submitted a grievance appeal. He indicated he had swollen lymph nodes, which was possibly related to his skin cancer, and a high white blood cell count. He requested a biopsy to rule out cancer or lymphoma, a "test to see what it is," and treatment.

Plaintiff contends Defendant GEO has a policy or "instituted orders to limit clinical visits," which is "partly why [he] can't get [his] lymph nodes tested or treated." He asserts

Defendant Richardson is deliberately indifferent because he is aware of Plaintiff's swollen lymph nodes, is the medical provider "assigned to care for [Plaintiff's] swollen lymph nodes," but has done "literally nothing to diagnose or treat" Plaintiff.[2] Plaintiff alleges Defendant Lucero was assigned in late May 2022 to evaluate the results of his blood test, which indicated a high white blood cell count, and to "respond to those results." He claims Defendant Lucero was deliberately indifferent because Defendant Lucero "did nothing" and failed to refer Plaintiff to provider or order additional testing or treatment, despite a high white blood cell count being a "warning sign to any medical professional" and "could've been the first indication for what is troubling [Plaintiff's] lymph nodes."

Plaintiff asserts that although Defendant Grassi had the ability to take corrective action regarding his informal resolution request, she was deliberately indifferent because she did nothing other than inform Plaintiff that he was "scheduled to see the provider." Plaintiff contends that although Defendant Puckett had the ability to take corrective action regarding his formal grievance, she was deliberately indifferent because she simply informed Plaintiff that his appointment with the provider "was still scheduled"; did not order a test for cancer, a biopsy, a diagnosis, or treatment; and "literally did nothing."

Plaintiff claims Defendant GEO's policy of limiting clinical visits and the individual Defendants' failure to diagnose or treat his swollen lymph nodes, failure to respond to the blood test that indicated a high white blood cell count, and failure to take corrective action when notified of problems with health care, has caused his swollen lymph nodes to "remain untreated/untested," allowing "symptoms of cancer to remain undiagnosed" and possibly allowing cancer to "metastasize and spread."

Liberally construed, Plaintiff has stated Eighth Amendment medical care claims against Defendants in Counts One and Two. The Court will require Defendants to answer the First Amended Complaint.

. . . .

. . . .

---

[2] Plaintiff asserts that on August 18, 2022, Defendant Richardson "called it TMJ."

1 **III. Motion for Appointment of Counsel**

2 Plaintiff seeks the appointment of counsel, alleging that he cannot afford counsel,
3 he has been unable to find an attorney to represent him, and his "worsening physical state"
4 would give Defendants an unfair advantage if he had to work on the case alone. He
5 contends the issues in the case are complex and require significant research and
6 investigation, but he has limited access to legal books and limited knowledge of the law.
7 Plaintiff also claims that a trial would likely involve conflicting testimony and that an
8 attorney would be better able to present evidence and cross-examine witnesses.

9 There is no constitutional right to the appointment of counsel in a civil case. *See*
10 *Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis,
11 the court may request an attorney to represent any person unable to afford one. 28 U.S.C.
12 § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when
13 "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.
14 1991). A determination with respect to exceptional circumstances requires an evaluation
15 of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his
16 claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these
17 factors is dispositive and both must be viewed together before reaching a decision." *Id.*
18 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

19 Having considered both elements, it does not appear at this time that exceptional
20 circumstances are present that would require the appointment of counsel in this case.
21 Plaintiff is in no different position than many pro se prisoner litigants. Thus, the Court will
22 deny without prejudice Plaintiff's Motion for Appointment of Counsel.

23 **IV. Warnings**

24 **A. Release**

25 If Plaintiff is released while this case remains pending, and the filing fee has not
26 been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court
27 that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

28

(2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Motion for Appointment of Counsel (Doc. 12) is **denied without prejudice**.

(2)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 11), this Order, and both summons and request for waiver forms for Defendants GEO, Richardson, Lucero, Puckett, and Grassi.

(3)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

. . . .

TERMPSREF

(4) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(5) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(6) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(7) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(8) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and/or (h)(1) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for

photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(10) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(11) This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 11th day of October, 2022.

James A. Teilborg
Senior United States District Judge